The suit has been filed. It has not reached that concrete state to render it subject to seizure and sale.

The words "exercised the right," of article 1991 of the Revised Civil Code, are in the past tense, and do not mean that the most incomplete attempt at the exercise of the right is to be taken as the equivalent of the actual exercise expressed in the past tense, denoting something completely done and accomplished.

Moreover, the right to seize the suit cannot be exercised while it is not determined whether the heir is entitled to collate.

By way of illustration it may be stated, had George J. Champagne, by whom the suit was brought which was seized by his creditors, departed this life before the suit was brought, the creditors would have been absolutely without right.

As relates to collation, and all the rights the proceedings for collation include, whatever they are, the plaintiff in injunction had a right and a cause of action in court to sustain his injunction. The injunction should not have been dissolved.

This disposes of the only point decided by the district court and the Court of Appeal.

The injunction will have to be reinstated.

The issues have been carefully considered, though briefly expressed. If the years of men were as many as in the days of Abraham and Jacob, we might dwell upon these issues at great length. As it is, we have sought to be brief, and have not deemed it necessary to cite authority to sustain each proposition.

For reasons stated, it is ordered, adjudged, and decreed that the judgments of the district court and of the Court of Appeal are avoided, annulled, and reversed, and the exception is overruled.

It is further ordered, adjudged, and decreed that the cause be remanded to the district court to be proceeded with according to law; that the writ of injunction be reinstated and made subject to the rule before laid down; that Bloch Bros., creditors, pay the costs of both courts; that the writs of certiorari and review be granted as prayed for, and made peremptory.

---

(46 South. 208.)

No. 16,944.

NEW ORLEANS LAND CO. v. NATIONAL REALTY CO., Limited.

(March 30, 1908.)

1. ACKNOWLEDGMENT — SUFFICIENCY—DEED UNDER PRIVATE SIGNATURE.

The acknowledgment was made before a notary in another jurisdiction, and the certificate of the officer was as required under law of the domicile of the parties by whom the deed was acknowledged. The deed was sufficiently legalized by the effect of time.

2. DEEDS—CONSIDERATION—PRICE.

There was a consideration expressed, and a further consideration implied.

3. TAXATION—TAX DEEDS—DESCRIPTION—SUFFICIENCY—IDENTIFICATION.

The property was described amply to maintain a tax title.

4. COSTS—ON APPEAL—AFFIRMANCE.

Appellant, who is not willing to accept title evidently legal and good, and so decreed by the court of the first instance, is bound for the costs of appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Costs, §§ 884–891.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. Durieve King, Judge.

Action by the New Orleans Land Company against the National Realty Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Felix Jonathan Dreyfous and Alfred David Danziger, for appellant. Charles Louque, for appellee.

BREAUX, C. J. Plaintiff sued for a judgment against the National Realty Company, Limited, to the end of compelling the last-named company to take title to square 804, in this city, bounded as stated in the petition.

It appears that on the 25th day of August, 1906, the National Realty Company sold the property to S. Sagari, for account of the New Orleans Land Company, plaintiff, for the price of $10,000, less 2 per cent.

The National Realty Company refused title, and petitioner, the New Orleans Land Company, alleged that the title is good and valid. It alleged that Charles W. Horner, who was at one time owner, and Thomas J. Durant, his partner, parted with their title, which is now owned by plaintiff, and that whatever irregularity, if any, there was in this title, had been ratified by Horner and the heirs of Thomas J. Durant on the 11th day of July, 1902. Plaintiff further urged that the tax title, which forms part of the chain of title which it tenders, dates back over three years from the date suit was brought, and that an action to annul the tax title would be of no consequence, as it would be defeated by the plea of prescription of three years.

The defense of the defendant company, called upon to take title, is that the square of ground in question was bought by said plaintiff company, part from Horner, by act before Morel, notary, on April 9, 1891, and the other part from John Spaniel, by act before Wilson, notary, on July 3, 1893; that

Horner bought from the heirs of J. T. Durant, by act under private signature, dated January 29, 1891, and that the price was $1 and other considerations; that this alleged $1 price vitiated the sale; and that the consideration stated could not be taken into account.

Durant, it appears, bought the property from Louis Janin in June, 1852.

The other portion, sold by Spaniel, as before stated, had been purchased by him on October 3, 1892, from the State Auditor (and here comes the tax deed before mentioned), by deed registered in the conveyance office.

The state purchased this property for the unpaid taxes of 1881 and 1883, assessed in the name of Alexander Milne, by acts passed before Spearing, notary, on January 17, 1905, and February 4, following, of the same year, registered in the conveyance office.

Defendant attacks the tax deed on the ground of vagueness in the description. It avers that the assessment shows that the property on Palmyra street in the name of Milne, which to some extent is traced back to James Milne, is assessed without giving dimensions or location, while the deed states that the property is in square 804, bounded by four streets; that in consequence the title is not legal and good; that the proceedings should be carried on contradictorily with Milne in order to give good title.

The verbal testimony taken on the trial shows that plaintiff has been in possession under title at least since the year 1898. But it goes further. In the year 1893 the attorney for plaintiff testified that he was president of the plaintiff company and had a fence constructed around the square in question.

We take up in the first place for decision defendant's first objection as presented in the order of argument, to wit, that the acts of Horner and the Durant heirs, acknowledged before a notary in Washington, D. C., are not authentic and are not in due form, even

as acknowledgment under private signature; that they do not show that the acknowledgment was witnessed by two witnesses.

On this particular point the facts are that the heirs of Thomas J. Durant signed a deed before Alexander Stewart, a notary in the District of Columbia, in the presence, as this notary states, of two witnesses. They did not sign the deed. They signed the acknowledgment, together with the notary.

This was in compliance with the requirements of the local laws. The deed was signed in the year 1891.

The capacity and signature of the notary are certified to by the clerk of the Supreme Court of the District of Columbia, as authorized by section 1778 and section 863 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1211, 661).

This acknowledgment was in the usual form in use in some of the other districts, and one usually accepted as correct.

Moreover, the Durant heirs under said deed (unauthentic) sold the property to Horner on January 28, 1891, for $100, or $1, as the case may be, and the other considerations.

Their acknowledgment was made before Stewart, notary.

On the 15th day of April, 1892, Horner sold to the New Orleans Swamp Land Reclamation Company.

After that date there was a certificate signed—i. e., April, 1902—in which the heirs of Durant ratified the sale in full.

The point has no merit.

The second ground urged by defendant is, as before stated, that the consideration of $1 is not a serious price.

That is true, but is not fatal here; for it is manifest that there were other considerations.

We turn to page 33 of the record, and find that the Durant heirs, for and in consideration of $100 then moved, passing to them from the party of the second part.

This is sufficient, in view of the fact that it is also stated that it was a matter connected with the settlement of the former partnership of Horner & Durant, and which is surely settled by the number of years that have elapsed; and, furthermore, it does not appear that the price was $1, but $100, and we have no reason to infer that at that time it was not sufficient consideration. If it was only $1, it devolved upon defendant to prove that fact. There is no question here of fraud or forgery. The property was considered afterward as having passed out of the ownership and possession of Durant & Horner.

It is next in the order of the defense contended that the constitutional prescription of three years does not cure a title, where the description of the property bought at tax sale is insufficient to identify it.

This is true as an original proposition, and particularly true where the facts are that the property is not susceptible of identification at all. This is not that case. The land is sufficiently designated. Four well-known streets, open and in use, are given in the different deeds as the boundary of the square numbered as before mentioned. It is the only property in controversy. It is the property which was sold at tax sale.

With the description before us, we must decide that there is nothing in this contention of the defendant.

We are of the opinion that the title, including the tax title and all, is good enough to bind all adverse contentions.

Lastly, the contention is raised that, where a judicial decree is necessary to perfect title, the cost of the legal proceedings should be thrown upon the owner.

We do not agree with that contention.

The costs were put on defendant in the lower court. The suit might have terminated there. Defendant chose to appeal.

Originally it would have been easy enough

by contract to provide for cost in the event that suit became necessary.

This was not done.

Since the appellant thought proper to appeal, the appeal should be at his costs.

For reasons assigned, the judgment is affirmed.