No. 4638.

**HEIRS OF ANT. WEBER vs. JOSE P. MARTINEZ.**

J. Z. Spearing, Geo. Montgomery for plaintiff and appellant.

Gabriel Fernandez, attorney.

H. J. Rhodes for defendant and appellee.

ST. PAUL, J.—This is a suit to annul a tax title pure and simple, an action recognized in terms by the very Constitution of the State.

We annex a sketch of the property in controversy, from which it will be seen that it is of irregular shape and forms the corner of New Orleans and Liberal Streets, measuring 199' 7'' 6''' front on the former, and 181' 6'' 6''' on the latter, the opposite or rear lines measuring re-

spectively 99' 5" 2'" and 191' 5" 3'". It is composed of eight lots, of various dimensions, as shown in detail on the sketch, two of which front on New Orleans Street, five on Liberal Street, and one forms the corner of the two streets. The area is approximately the same as that of a square measuring 160 feet each way.

Antoine Weber purchased this property in 1844. He owned no other property in the same square, No. 1179.

From 1880 to 1884 the property was assessed as follows: "Square 1179. St. Bernard, New Orleans, Liberal and Force, Antoine Weber. New Orleans & Liberal, 160x 160', $300."

In 1885 the poperty was sold to the State for the unpaid taxes of 1882 and described in the deed as "Certain lots of ground and improvements thereon in the Third District of the City of New Orleans, in Square No. 1179, bounded by New Orleans, Liberal, St. Bernard and Force Streets. Said lots front on New Orleans Street."

On September 4, 1903, the State Auditor, proceeding under the provisions of Section 3 of Act No. 80 of 1888 sold said property to the defendant, describing it as: "Eight lots of ground and improvements in the Third District, in Square 1179, bounded by New Orleans, Liberal, St. Bernard and Force Streets. Said lots front on New Orleans and Liberal, and measure 200' on New Orleans and 191' on Liberal." It does not appear whence the Auditor obtained the description by which he sold.

The property is unimproved. Defendant was at one time, at least, in physical possession thereof, and had surrounded same by a fence; he also paid all taxes thereon since obtaining his deed. There is some conflict of testimony as to whether he is in physical possession at this time, but admittedly plaintiffs have at no time been in physical possession of the land.

Numerous points are urged pro and con the validity of the conveyances under which defendant holds title, but

we deem it necessary to consider only one, viz: whether the description under which the State acquired at tax sale in 1885 is sufficient to identify the property.

If the description be sufficient for that purpose, the constitutional prescription of three years has long since been accomplished and plaintiffs cannot now maintain this action. On the other hand, if that description be so fatally defective as not to identify the property, the defect was one which could not be cured by that prescription, and was, therefore, necessarily too defective to convey title.

### 117 La. 686; 121 La. 200.

Now it will be perceived that the description in the Auditor's deed is not identical with that given in the tax deed to the State, nor is the description in the latter identical with that given in the assessment roll.

The description in the Auditor's deed describes the property with sufficient accuracy for any purpose. But the description in that deed cannot cure the defect if any there be in the original tax deed to the State. ''Tax proceedings must stand or fall as made. * * * If there has been error, the error is fatal, and cannot be corrected by **exparte** consent proceedings to which the owner has not consented or been privy.''

### Ramos Lumber Co. vs. Labarre, 116 La. 581.

Hence, the inquiry must be directed towards the description in the tax deed to the State, and the first question that arises is whether that description, if defective, can be supplemented by production of the tax rolls.

The tax deed might indeed have referred to the roll and made the description in the roll part of the deed. **(Wilson vs. Marshall, 10 An. 329.)** But ''what the State officers may have intended to do or could have legally done was merged into what they actually did.'' **(Ramos**

Lumber Co. vs. Labarre, 116 La. 581.) In this case the description in the roll was not referred to or made a part of the deed. "A party claiming under a tax deed necessarily relies in the letter of his bond." (Stout vs. Masten 139 U. S. 155.) The purchaser at tax sale should be able "to put his foot on a particular spot of ground and say, by virtue of his **deed,** 'this was S' and now is mine.' " * * * Where the deed does not enable him to do this it is not "translative of property in any particular thing, and labors under a defect which time cannot cure." (Wilson vs. Marshall, 10 An. 330.)

We are of opinion that the description in the tax roll forms no part of the description in the tax deed, unless expressly so made, and accordingly the deed is void if the description therein be too defective to identify the property, even though the description in the tax roll might have been sufficient for that purpose.

### Stout vs. Masten, 139 U. S., p. 155.

As to the description in the tax deed it is manifestly too defective to be "translative of property in any particular thing." The expression "certain lots of ground" may mean any number of lots from two to twenty or more, and the term "a lot of ground" gives no more definite idea of quantity than the term "a tract of land." Neither location, dimensions, area nor boundaries are given, and the description might cover the whole square or any portion thereof touching New Orleans Street, no matter how large or how small.

No one would accept such a description in an act of sale or mortgage. Defendant himself would not accept it; the Auditor's deed, to which defendant became a party by his acceptance thereof, is a confession that the description in the tax deed was too defective for a deed, otherwise there was no reason to vary the description in so many

— 43 —

material particulars, such as giving the number of lots, the location and dimensions.

The State had no title and the Auditor could convey none to defendant.

So much for the sale for the taxes of 1882, and the Auditor's deed under which defendant claims.

But defendant further urges that plaintiffs are without interest in the lots in controversy as same were forfeited to the State for the unpaid taxes of 1873 to 1878, and were afterwards adjudicated to defendant under the provisions of Act 82 of 1884, to-wit: In 1886, at which time defendant first took possession of the property. It is admitted, however, that defendant never complied with his adjudication or took out any deed thereunder.

There is no evidence on the subject in the record other than an informal certificate by the Tax Collector (June 24, 1904), that the property was sold to the defendant for the taxes of those years, whilst a research of later date (September 20, 1907), says that there are now no records in the Tax Collector's office of the taxes of those years.

An informal certificate by the Tax Collector has none of the probative force given by law to a tax deed, and, hence, does not supply the proof which such a deed would have made. Such a certificate furnishes no proof that the property was ever assessed for those years, or that the taxes for those years were not paid, or that any of the prerequisites and formalities necessary for a valid forfeiture were ever complied with. The lack of records for those years now makes the proof impossible. Hence, there is no proof in this record to warrant a Court in adjudging that the property was ever forfeited to the State, and a forfeiture must be shown, it cannot be assumed.

We are of opinion that the plaintiff's title to the property in controversy has never been divested.

It is, therefore, ordered that the judgment of the District Court be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs and appellants, Mrs. Caroline Stendlien, wife of John Chorreau; Mrs. Annie Stendlien, widow of Frank Meninger; Frank Stendlien and Charles Stendlien, and against the defendant and appellee, Jose P. Martinez, recognizing said plaintiffs as the owners of the property in controversy herein, and more fully described in their petition and in an act of sale by Chas. L. H. Kernion to plaintiffs' ancestor Antoine Weber, passed before Joseph Cuvillier, notary, on March 13, 1844, and registered in the Conveyance Office in Book 36, folio 130. It is further ordered that the sale by Chas. Cavanac, State Tax Collector, to the State of Louisiana, passed before A. A. Ker, notary, on March 14, 1885, and registered in C. O. Book 122, fol. 614-703 be canceled and erased in so far as the same purports to effect certain lots of ground in Square 1179, bounded by New Orleans, Liberal, Force and St. Bernard Street, fronting on New Orleans Street and sold as the property of Antoine Weber. It is further ordered that the sale by W. S. Frazee, State Auditor, to Joseph P. Martinez, dated September 4, 1903, and registered in C. O. Book 197, fol. 119, be canceled and erased. It is further ordered that said J. P. Martinez be enjoined and prohibited from laying any further claim to said property, and that he pay the costs of both courts. It is further ordered that the right be reserved to the said Joseph P. Martinez to recover of plaintiffs the price of adjudication with 20% penalties and the taxes paid by him.

June 7, 1909.

Rehearing granted June 25, 1909.

## On Rehearing.

DUFOUR, J.—Upon a re-examination of the authorities cited by both sides, our conclusion that the description given in the Tax Collector's deed is insufficient to identify and locate the property, has been confirmed.

It is impossible to say how many lots were intended to be conveyed under the caption of "certain"; the Tax Collector may have sold any number from two to eight.

The application for a rehearing is accompanied by a motion to remand on the ground that the petitioner and his attorney did not know of the existence of certain tax rolls until June the 11th, 1909, copies of which are annexed to the application. office of the Recorder of Mortgages for the Parish of

An examination of these show that the delinquent tax rolls for several years previous to 1880 were filed in the Orleans

We do not see how such a showing would assist the defendant. We understand the law to be that forfeiture results from the filing of the delinquent lists in the Auditor's office and not in that of the Recorder of Mortgages.

### Mier vs. Howcott, 3181 of our Docket; Act 96 of 1877, Sec. 61; Act 42 of 1871, Sec. 68.

Be that as it may, however, we think it inadvisable to

remand a cause on the suggestion made for the first time in an application for rehearing, that certain proof which has stood upon the public records for more than thirty years has just been discovered.

It would be putting a premium on carelessness and negligence and setting forth a precedent destructive of the salutary maxim, "interest reipublicae ut sit finis litium."

Our previous decree is reinstated.

December 13, 1909.